IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

17 JUN 12 AM 11:53

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
        DEPUTY CLERK

RENE PEREZ,
          Movant,

-vs-

UNITED STATES OF AMERICA,
          Respondent.

CAUSE NO.: A-17-CA-00027-SS
[A-14-CR-292-SS]

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Movant Rene Perez's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [#797], Perez's Memorandum [#798] in support, Respondent United States of America's Response [#808] in opposition, and Perez's Reply [#813] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

On October 7, 2014, Movant Rene Perez was charged with conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, and conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Indictment [#3]. On May 7 and 19, 2015, Perez appeared before Magistrate Judge Austin for rearraignment and plea. Instead of pleading to the charges, however, Perez moved for new counsel. In his written order denying Perez's motion, Judge Austin noted that this was not Perez's first motion to appoint new counsel; his first attorney was permitted to



withdraw on February 18, 2015, after Perez complained about his counsel's representation. Order of May 8, 2015 [#486] at 1. Having heard from both Perez and his counsel, Ricardo Guzman, Judge Austin concluded "there is no conflict of interest between Perez and his attorney," and "Perez's attorney has worked diligently to review the extensive amount of discovery in the case, and is fully capable and prepared to go to trial on the case, and to zealously represent Perez." *Id.*

On June 1, 2015, a superseding information was filed, charging Perez with conspiracy to possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine. Superseding Information [#493]. The charge related to conspiracy to distribute cocaine was dropped. That same day, Perez pleaded guilty to the superseding information before Magistrate Judge Lane. There was no plea agreement.

This Court held a two-day sentencing hearing on August 27 and 28, 2015. The presentence report (PSR) prepared in advance of these hearings calculated Perez's base offense level as 34 and added enhancements for possessing a firearm, importing methamphetamine, maintaining a premise for the purpose of distributing methamphetamine, and for acting as a leader or organizer of criminal activity that involved five or more participants. With a total offense level of 41 and a criminal history category of III, the guideline range for imprisonment was 360 months to life. At the sentencing hearings, the Government produced evidence of over 400 intercepted phone calls connecting Perez to a conspiracy involving drug trafficking and money laundering. Aug. 27, 2015 Hr'g Tr. [#754] at 30:16–18. For instance, one of the intercepted phone conversations involved a leader of the conspiracy, Mario Gonzalez, collecting $100,000.00 from Perez. *Id.* at 19:3–15. The Government also produced evidence of drugs seized

2

from a house located at 7311 Northeast Drive, Austin, Texas (the stash house) and Perez's connection to that property.

Perez's counsel objected to the guideline range based on the drug quantities calculation, the firearm enhancement, the stash house enhancement, and the leader/organizer enhancement. Aug. 28, 2015 Hr'g Tr. [#755] at 2:21–3:7. The Court sustained counsel's objection to the stash house enhancement and overruled the other objections. *Id.* at 18:17–18. Perez's total offense level was therefore reduced to 39; with a criminal history category of III, the guideline range for imprisonment was 324 to 405 months.

Following the hearing on August 28, 2015, this Court sentenced Perez to a 324-month term of imprisonment and a five-year term of supervised release. Judgment [#696]. Perez filed a notice of appeal on September 3, 2015. Notice Appeal [#720]. The Fifth Circuit dismissed Perez's appeal on July 13, 2016, concluding "the record is not sufficiently developed to allow us to make a fair evaluation of Perez's claims of ineffective assistance of counsel" and "concur[ring] with the counsel's assessment that the appeal presents no nonfrivolous issue for appellate review." *United States v. Perez*, No. 15-50828 (5th Cir. July 13, 2016).

On January 11, 2017, Perez executed the instant § 2255 motion, arguing he received ineffective assistance of counsel. Mot. [#797]. Following several motions for extension of time, the motion is now ripe for decision.

**Analysis**

I.  **Legal Standard**

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court

3

that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

## II. Application

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). In the context of sentencing, the movant must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. *See United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

4

Perez asserts a myriad of arguments in an attempt to show he received ineffective assistance of counsel. These arguments fall into two broad categories:

(1) ineffective-assistance-of-counsel claims based on his counsel's advice prior to his plea hearing, and specifically:

   a. his counsel erroneously promised Perez he would face only 72 months of imprisonment;

   b. his counsel failed to inform him about an "additional page" attached to the factual basis supporting his plea to the superseding information;

   c. Perez was misinformed about the drug quantities involved in the superseding information; and

   d. Perez had insufficient time to confer with his counsel and his counsel did not investigate his case.

(2) ineffective-assistance-of-counsel claims based on his counsel's performance at his sentencing hearings, and specifically:

   a. his counsel failed to file a motion to suppress;

   b. his counsel failed to file "reasonable objections" to the PSR;

   c. the Court overruled his counsel's objection to the leader/organizer enhancement;

   d. the Court overruled his counsel's objection to the drug quantities involved at sentencing;

   e. his counsel failed to object to his criminal history calculation; and

   f. his counsel failed to raise a conflict of interest.

The Court addresses each argument in turn.

**A.  Perez's Guilty Plea**

Many of Perez's ineffective-assistance-of-counsel arguments go to the validity of his guilty plea. The Fifth Circuit has stated,

> To be constitutionally valid, a guilty plea must be knowing and voluntary. A guilty plea may be invalid if induced by defense counsel's unkept promises. On

> the other hand, a defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath. "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings."

*United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citations omitted) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). Conclusory allegations of ineffective assistance of counsel fail to overcome the formidable barrier presented by a defendant's open court assertions. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).

Prior to entering his guilty plea at the hearing held on June 1, 2015, Perez took an oath to tell the truth. Judge Lane specifically instructed Perez, "everything you say after taking the oath must be truthful, otherwise, you subject yourself to the penalties of perjury or false statement." Resp. [#808-1] Ex. A (June 1, 2015 Hr'g Tr.) at 2:13–16. Perez affirmed he understood Judge Lane's admonition. *Id.* at 2:18.

Judge Lane then questioned Perez's counsel regarding his representation of Perez. Perez's counsel explained he had sufficient time to discuss with Perez the following information: the initial charges and the charges described in the superseding information; Perez's possible defenses to the charges; the important constitutional and statutory rights he would "be giving up . . . by entering a plea"; and the importance of the federal sentencing guidelines set out in Title 18 in determining "a reasonable sentence in federal court." Perez's counsel indicated he believed Perez had a rationale understanding of the charges filed against him, and he was competent to enter a guilty plea. *Id.* at 5:17–6:16.

Perez, for his part, confirmed he told his counsel everything he knew about the facts and circumstances which led to his arrest and indictment, and that he had spoken with his counsel about possible defenses to these charges. *Id.* at 6:18–7:19. Perez unequivocally declared under oath that he was satisfied with his counsel's representation in this matter. *Id.* at 7:12–19. Judge

Lane then advised Perez of the filing of a superseding information and his right to have the matter presented to a grand jury. *Id.* at 8:8–9:1. Perez admitted he had either read over the information or reviewed it carefully with his counsel. *Id.* at 9:2–14. Judge Lane then read Perez the charge, and Perez affirmed he understood the charge set out in the superseding information.

Though Perez claims his counsel promised him a 72-month term of imprisonment if he signed the superseding information, this assertion is plainly undercut by the transcript from the June 1, 2015 hearing. In addition to affirming his understanding of the charge described in the superseding information, Perez indicated he understood he faced a range of punishment between five years and forty years of imprisonment. *Id.* at 11:19–21. Perez admitted on at least two occasions that he "simply d[oes] not know what [his] sentence will be," only that it would be at least five years in prison and could be as great as forty years in prison. *Id.* at 11:24–12:9, 16:10–23. Perez affirmed that he understood his counsel can only estimate what his sentence will be, and that it is ultimately the district judge who, after "conduct[ing] his own independent review," will decide Perez's sentence. *Id.* at 15:22–16:23. Perez never mentioned his counsel's alleged promises as to his potential sentence, despite numerous opportunities to do so. Moreover, Perez's counsel has since testified he never promised Perez a 72-month sentence and specifically informed Perez the drug quantities would be determined at sentencing. Resp. [#808-2] Ex. B (Guzman Decl.) ¶ 8. Perez's conclusory assertions to the contrary are insufficient to overcome the "strong presumption of verity" afforded his statements at his plea hearing. *See Cervantes*, 132 F.3d at 1110.

Perez also contends his counsel failed to adequately advise him about the superseding information and the two-page factual basis attached to the information. Perez claims he was unaware of an additional page added to the factual basis after he signed both the information and

the factual basis and his counsel was ineffective for failing to notify Perez of this additional page. Here again, however, Perez's statements at the plea hearing undercut his present contentions. At the plea hearing, Perez affirmed he reviewed with counsel both the superseding information and the *two-page* factual basis prior to appearing in court, and he expressly acknowledged he had no objections to the document. Judge Lane directly questioned Perez whether the facts set out in the factual basis were true, to which Perez unequivocally responded, "Yes." June 1, 2015 Tr. at 20:24.

Perez's present claims are further weakened by counsel's declaration that Perez reviewed the one-page superseding information and the attached two-pages containing the factual basis, and Perez understood these documents prior to signing pages one and three. Guzman Decl. ¶ 4. His counsel testified he "thoroughly discussed with [Perez] the charges against him, including the original claim and superseding information," and explained "the consequences of pleading guilty, possible defenses, [the] factual basis[,]" and "possible enhancements." *Id.* ¶ 3. Perez has failed to show his counsel's performance was deficient on this basis.

Perez also claims he was misinformed about the drug quantities involved in the superseding information and at sentencing. In essence, Perez argues the superseding information only charged him with conspiracy to distribute methamphetamine, but he was erroneously sentenced for his involvement in a conspiracy to distribute cocaine. The superseding information charged Perez with conspiracy to possess with intent to distribute 50 grams or more of methamphetamine. But his counsel testified that he "explained the factual basis and superseding information to Perez and discussed how sentencing would be determined in a drug case . . . ." Guzman Decl. ¶ 8. According to his counsel, "Perez understood that at sentencing drug quantities including both methamphetamine and cocaine could be attributed to him in addition to

the drug quantities he pled to in the superseding information." *Id.* His counsel further testified he warned Perez the Government intended "to attribute [to Perez] 3 kg methamphetamine/7 kg cocaine on up, based on the numerous intercepted calls and likely cooperators." *Id.* Perez has failed to show his counsel's performance was deficient on this basis.

Perez further claims he did not have time to confer with his counsel and his counsel did not investigate his case. At the plea hearing, however, Perez admitted under oath he had sufficient time to visit with his attorney, he consulted with his attorney regarding his possible defenses, and he was satisfied with his attorney's performance. June 1, 2015 Hr'g Tr. at 5:8, 7:6–14. In confirmation of Perez's statement, his counsel testified he "consulted with [Perez] eight times in Bastrop" in order to "discuss the case and the evidence against him," each time making the Government's "11 GB of electronic discovery[] available to him" for his review. Guzman Decl. ¶ 5. Thus, Perez was aware his counsel conducted discovery, and at one point even listened to the pertinent intercepted telephone conversations on counsel's laptop. *Id.* Perez's counsel also testified that he met with Perez to discuss the PSR, and in particular, Perez's possible "objections to drug quantities calculation as well as other enhancements." *Id.* ¶ 6. Perez has again failed to show his counsel's performance was deficient on this basis.

**B. Perez's Sentencing**

The remainder of Perez's ineffective-assistance-of-counsel claims relates to his counsel's performance at the sentencing hearings. Perez's base offense level was calculated, in part, based on four kilograms of cocaine discovered at the stash house. At sentencing, Perez's counsel objected to the drug quantities calculation, an enhancement based on the maintenance of the stash house, as well as to evidence of drugs discovered during a traffic stop of a vehicle seen leaving the stash house. The Court ultimately granted counsel's objection to the enhancement

based on the maintenance of the stash house. Nevertheless, Perez faults his counsel for failing to file a motion to suppress this evidence. The Sixth Amendment does not require counsel to file "meritless motions." *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). To establish his counsel was ineffective for failing to file a motion to suppress, then, Perez must demonstrate (1) a suppression motion would have been meritorious, (2) counsel's failure to file one such a motion was objectively unreasonable, and (3) but for his counsel's deficient performance in that regard, Perez would not have pleaded guilty. *See United States v. Ratliff*, 582 F. App'x 321, 321 (5th Cir. 2014) (quoting *United States v. Ratliff*, 719 F.3d 422, 423 (5th Cir. 2013)).

The PSR recounts that on May 16, 2014, there were "a series of calls reflecting that Rene Perez picked up four kilograms of cocaine from Oscar Avila-James, a source of supply who operated his own Drug Trafficking Organization in Austin, and who was not indicted in this case. Surveillance officers observed Rene Perez take the cocaine to [the stash house]." PSR [#654] at 10. Moreover, a series of calls occurred between May 19 and 20, 2014, in which the distribution of the three kilograms of cocaine was discussed in connection with the stash house.

Perez's counsel testified that intercepted phone conversations connected Perez to the stash house for "drug quantity purposes," and "[t]hese recorded conversations were supported by federal court intercept orders which [he] reviewed." Guzman Decl. at ¶ 9. His counsel therefore concluded he "did not believe a motion to suppress would have likely been unsuccessful." *Id.* Perez has failed to make a contrary showing. Nor has Perez shown that but for his counsel's failure to file the motion to suppress, he would not have pleaded guilty.

Perez next contends his counsel's performance was deficient for failing to file "reasonable objections" to the PSR. As noted, Perez's counsel filed four objections to the PSR based on the drug quantities calculation, the firearm enhancement, the enhancement for

maintaining premises for distribution, and the leader/organizer enhancement. Aug. 28, 2015 Hr'g Tr. [#755] at 2:21–3:7. At the sentencing hearing, Perez's counsel cross-examined the Government's agent about the facts supporting Perez's offense-level calculation. Aug. 27, 2015 Hr'g Tr. [#754] at 64–84. The objection to the enhancement for maintaining the premises for distribution was ultimately sustained. Aug. 28, 2015 Hr'g Tr. [#755] at 18:17–18. Though Perez's objection to the leader/organizer enhancement was overruled, his counsel successfully elicited from Special Agent Royce Clayborne on cross-examination that Perez was not the only person who controlled other people in this conspiracy. *Id.* at 69:1–17. Perez's conclusory assertion that his counsel failed to file "reasonable objections" is plainly contradicted by the record.

To the extent Perez argues his counsel should have objected to the PSR on the basis of hearsay, that objection would have been meritless. It is well-established that a defendant's confrontation rights are not extended to sentencing proceedings, and Perez presented no evidence to demonstrate the information in the PSR was materially untrue, inaccurate, or unreliable. *See United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006). Perez's counsel was not ineffective for failing to raise a meritless objection.

Perez also maintains his counsel's performance was deficient because the Court overruled his objection to the leader/organizer enhancement. But the evidence produced at the sentencing hearing provided ample support for the application of this enhancement. Special Agent Royce Clayborne testified the Government intercepted telephone conversations indicating one of the leaders of the criminal organization, Mario Gonzalez, collected $100,000.00 from Perez. Aug. 27, 2015 Hr'g Tr. [#754] at 19:3–15. Agent Clayborne further testified Perez controlled other people involved in the conspiracy, delivered large quantities of drugs, and

collected drug proceeds. *Id.* at 65:15–66:1; *see also United States v. Bell*, No. 99-50476, 2000 U.S. App. LEXIS 38827, at *9–10 (5th Cir. Dec. 20, 2000) (affirming district court's denial of § 2255 motion based on counsel's failure to object to the application of the leader/organizer enhancement, because the PSR established the defendant supplied narcotics and enforced payment). Agent Clayborne explained Perez oversaw the activities of Jose Toledo, who operated the stash house. Aug. 27, 2015 Hr'g Tr. [#754] at 23:21–24:10. He further testified Perez supplied drugs to Francisco Lopez and Alejandro Rodriguez and would "put pressure" on these individuals to make timely payments. *Id.* at 24:15–25:20. According to Agent Clayborne, Perez would provide Lopez "anywhere between a couple of ounces to half a pound of narcotics a day." *Id.* at 24:18–19. Agent Clayborne stated, "the quantities that [Perez] was moving, before [they] got to the street level . . . would change four or five hands sometimes." *Id.* at 25:7–8. Agent Clayborne's testimony also revealed that Alejandro Rodriguez was collecting a drug debt from Juan Barrientos on Perez's behalf. *Id.* at 25:7–26:6. As noted, Perez's counsel objected to the application of the leader/organizer enhancement and extensively cross-examined the Government's witness about his testimony on direct. Perez has failed to show his counsel's performance was deficient.

Perez further maintains his counsel's performance was deficient because the Court overruled his objection to the drug quantities involved at sentencing. But there was sufficient evidence in the record to support the Court's drug quantities calculation. At the sentencing hearing, Agent Clayborne testified that in "just one day, Perez was asked for five keys of methamphetamine." *Id.* at 28:3–24. Perez only had two kilograms left that day, but he agreed to supply those two kilograms. *Id.* at 28:8–9. Four days later, the same person asked for another quarter kilogram, which Perez again agreed to supply. *Id.* at 28:9–11. On another day, the agent

witnessed Perez "get six kilograms" of cocaine in one day. *Id.* at 29:6. Agent Clayborne further testified that over 300 grams of methamphetamine was found at Perez's residence, and the results of another search revealed "1.5, 1.6 kilograms of cocaine that belonged to Perez." *Id.* at 28:20–24, 30:22–24. Based on this evidence, Agent Clayborne testified that, under an "extremely conservative" estimate, Perez should be held accountable for 26 kilograms of cocaine and three kilograms of methamphetamine. *Id.* at 27:7–20. The Court, which is permitted to consider "estimates of the quantity of drugs for sentencing purposes," subsequently overruled Perez's objections as to the drug quantities calculation. *See United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998) (citation omitted). Perez's counsel objected to the drug quantities involved and cross-examined Agent Clayborne about the facts supporting this calculation. Perez has failed to show his counsel's performance was deficient.

Perez also faults his counsel for failing to object to the calculation of his criminal history. According to Perez, two points were erroneously added to his criminal history because his "parole was terminated in 2008" and he was "no longer on parole" when the drug conspiracy in the instant case began. On June 22, 2001, a Wisconsin county court convicted Perez of delivery of cocaine. PSR [#654] at 19. The Wisconsin court sentenced to Perez to four years of imprisonment followed by four years of extended supervision. *Id.* Two weeks into his supervised release, Perez was deported to Mexico. On January 7, 2008, a warrant was issued for Perez's arrest; that warrant remains active. *Id.* Because Perez was still under a criminal justice sentence when he committed the offense in the present case, his criminal history calculation was not in error. Perez's counsel was not ineffective for failing to raise an objection on this basis.

Finally, Perez appears to argue his counsel's performance was deficient because his counsel failed to raise a conflict of interest. Perez first raised this argument at a hearing held

before Judge Austin on May 7, 2015, several weeks before the superseding information was filed. In denying Perez's request for a new attorney, Judge Austin noted that this was not the first time Perez had requested a new attorney. Order of May 8, 2015 [#486] at 1. His original attorney was permitted to withdraw on February 18, 2015, after Perez complained that his attorney did not speak Spanish and because Perez was displeased with his attorney's suggestion that he resolve the charges without a trial. *Id.* Judge Austin examined both Perez and his attorney and concluded "there is no conflict of interest between Perez and his attorney." *Id.* He further noted he was satisfied that "Perez's attorney has worked diligently to review the extensive amount of discovery in the case, and is fully capable and prepared to go to trial on the case, and to zealously represent Perez." *Id.*

In order to prevail on an ineffective-assistance-of-counsel claim based on an alleged conflict of interest, Perez must demonstrate his counsel's alleged "conflict of interest adversely affected his lawyer's performance.'" *United States v. Scruggs*, 691 F.3d 660, 670 (5th Cir. 2012) (citation omitted). Because a "voluntary and unconditional guilty plea waives all non-jurisdictional defects antecedent to the plea," to succeed on his claim, Perez would have to "show that counsel's alleged conflict of interest rendered his plea involuntary." *Id.* Perez has made no such showing in this case.

The record in this case conclusively shows Perez's ineffective-assistance-of-counsel claims are without merit. His § 2255 motion is therefore denied without an evidentiary hearing. *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (stating that a § 2255 motion may be denied without an evidentiary hearing "if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief").

14

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Perez's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a certificate of appealability shall not issue.

## Conclusion

Accordingly,

15

IT IS ORDERED that Movant Rene Perez's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [#797] is DENIED; and

IT IS FINALLY ORDERED that a certificate of appealability is DENIED.

SIGNED this the 12th day of June 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE